Gail H. Stone, Executive Secretary Arkansas State Police Retirement System One Union National Plaza
124 West Capitol, Suite 400 Little Rock, Arkansas 72201
Dear Ms. Stone:
This is in response to your request for my opinion concerning A.C.A. § 24-6-304, which addresses benefits under the Arkansas State Police Officers Deferred Option Plan. I will refer to this plan as the "State Police DROP."[1] Your question pertains specifically to subsection 24-6-304(b), which states as follows with respect to interest earned on the accounts of State Police DROP participants:
 (1) A member who participates in the plan shall earn interest at a rate set by the Board of Trustees of the State Police Retirement System that shall not be greater than the actuarially assumed investment rate of return for that time. *Page 2 
 (2) The interest shall be credited to the individual account balance of the member on an annual basis.[2]
As you note, this subsection was enacted under Act 404 of 2007.[3]
Prior to the adoption of Act 404, legislation enacted in 2005 amended the interest formula under subsection 24-6-304(b) to provide that for the first five years of their participation, all members will earn interest at a rate two percentage points below the rate of return of the System's portfolio or the actuarially assumed interest rate, whichever is higher; and that for the final two years of their participation, all members will earn interest at the actuarially assumed interest rate.[4]
 Act 404 of 2007 thus authorized the Board to set a lower rate of return than the rate specified in the former A.C.A. § 24-6-304(b). This has prompted your question, which I have paraphrased as follows:
 Are those members who entered the State Police DROP prior to the effective date of Act 1969 of 2005 entitled to receive the higher rate of return over the life of their participation despite the changes made in the law by Act 404 of 2007? *Page 3 
RESPONSE
A definitive answer to this question can only be provided by a court. In my opinion, a court faced with the issue might conclude that the interest rate changes made by Act 404 of 2007 cannot be constitutionally applied to those DROP participants who entered the Plan before Act 404's effective date. But a definitive answer is impossible in the absence of a case squarely on point.
Your question raises a difficult constitutional issue involving the prohibition against the impairment of contracts.[5] As I and several of my predecessors have previously explained, the Arkansas Supreme Court has held that legislation violates the so-called "impairment of contract" prohibition if it operates retroactively so as to divest previously existing contractual rights, and specifically rights arising under a public retirement plan.E.g., Op. Att'y Gen. Nos. 2008-057, 2006-138 and 97-435 (citingPyle v. Webb, 253 Ark. 940, 489 S.W.2d 796 (1973) andJones v. Cheney, 253 Ark. 926, 489 S.W.2d 785 (1973)). Seealso Op. Att'y Gen. Nos. 2009-049 and 2008-052.
In Attorney General Opinion 2006-138, my predecessor opined generally that a change in the prescribed benefits after a member enrolls in the Teacher Deferred Retirement Option Plan ("T-DROP") would be constitutionally suspect.[6] My predecessor so opined based on the above constitutional principle prohibiting the impairment of contracts, and Arkansas case law concerning rights arising under public retirement plans. I have similarly opined that the elimination of DROP for members of the Arkansas Public Employees Retirement System who meet the requirements to participate in the plan would probably be constitutionally suspect. Op. Att'y Gen. 2008-057. I will not repeat the analysis in these opinions. The analysis has been restated and elaborated upon in other opinions issued by my administration. E.g., Op. Att'y Gen. Nos. 2009-102 and 2008-052. I believe a similar analysis applies with respect to changes in the State Police DROP. The issue is two-fold: whether there are valid protectable contractual obligations in place, and whether the enactment ofAct 404 of 2007 impairs any such rights to an unconstitutional extent.Id. *Page 4 
The Arkansas Supreme Court has not addressed the impairment of contract proscription in the context of a retirement plan such as the State Police Retirement System or the State Police DROP. It is thus impossible to predict how our court would approach the issue.Compare Op. Att'y Gen. 2008-052 (regarding service credit under the Arkansas Public Employees Retirement System). Assuming the existence of a contract between the participants in the State Police DROP and the State so as to implicate the contracts clause, the constitutional inquiry then turns to whether the enactment ofAct 404 of 2007 impairs the contract to any unconstitutional extent. This will require identifying the terms of the retirement benefit contract, sometimes referred to as the "prescribed benefits."See Op. Att'y Gen. 2008-052 at 7; Op. Att'y Gen. 2009-049 at 4. If a contract exists, and if the interest formula specified byAct 1969 of 2005 is included among the contract's terms, then in my opinion a court faced with the question might conclude that the interest rate changes made by Act 404 of 2007 cannot be constitutionally applied to those State Police DROP participants who entered the plan before Act 404's effective date. However, I am unable to opine definitively whether either of these contingencies is met in this case.
As noted above, the court's approach to the contract issue remains an open question. Additionally, while this office has previously expressed concerns regarding the constitutionality of changes in benefits for those qualified to participate in state-supported deferred retirement option plans, guidance is lacking on what precise changes might trigger this concern. On the one hand, it would seem reasonable to surmise that the crediting of annual interest on individual DROP accounts is part of the prescribed benefits. On the other hand, the statute does not prescribe a set interest rate. This may undermine the argument that the State Police DROP participants were assured of earning a particular rate of interest on their account balances. Compare Op. Att'y Gen. 2009-102 (regarding a proposed reduction in pension benefits that had been increased for members of a local pension and relief fund, where the applicable statute plainly provided for the increased benefits). This may in turn lend support for the view that the interest rate formula is subject to subsequent modification, even as to those who may have protected contractual rights in the DROP.
The uncertain resolution of these issues makes it impossible to determine whether those members who entered the State Police DROP prior to the effective date of Act 1969 of 2005 are entitled to receive the higher rate of return despite the *Page 5 
changes effected by Act 404 of 2007. Resort to the courts will likely be necessary to definitively resolve the matter.
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] To be eligible to participate in the State Police DROP under A.C.A. § 24-6-301 et seq. (Repl. 2000 and Supp. 2009), a member must have at least thirty years of credited service in the State Police Retirement System. Id. at-301 (Supp. 2009). Those meeting the requisite conditions may elect to participate and defer the receipt of retirement benefits in lieu of terminating employment and accepting a service retirement pension. Id. The monthly retirement benefits that would have been payable if the officer had chosen regular retirement will be paid into the State Police DROP account. Id. at-303 (Repl. 2000). The participant will have the option of receiving a lump-sum payment equal to the payments to the State Police Drop account, a true annuity, or any other method of payment approved by the System's Board of Trustees.Id. at-305 (Rep. 2000).
[2] A.C.A. § 24-6-304(b) (Supp. 2009).
[3] Acts 2007, No. 404, § 3.
[4] Acts 2005, No. 1969, § 2. As amended by the 1969 act, Subsection 24-6-304(b) provided in full:
 (b)(1) Except as provided in subdivision (b)(2) of this section, a member who participates in this plan shall earn interest at a rate of two (2) percentage points below the rate of return of the investment portfolio of the State Police Retirement System, but no less than the actuarially assumed interest rate as certified by the actuary.
 (2) Any member participating in the Arkansas State Police Deferred Option Plan for any period of time beyond his or her fifth complete year shall earn interest equal to the actuarially assumed interest rate for that time.
Section 1 of Act 1969 amended another Code section, A.C.A. § 24-6-306, to extend the State Police DROP participation period from 5 to 7 years.
Another act was passed during the 2005 legislative session to amend the interest rate formula under A.C.A. § 24-6-304(b).See Acts 2005, No. 1024. However, the Arkansas Code Revision Commission determined that this latter act was superseded by Act 1969; and this office has agreed with that determination.See Op. Att'y Gen. 2006-012 (opining that Acts 1024 and 1969 of 2005 are irreconcilable and that Act 1969 controls because it was enacted later in time).
[5]
Ark. Const. art. 2, § 17 and U.S. Const. art. 1, § 10.
[6] T-DROP is codified at A.C.A. §§ 24-7-1301 — 1316 (Repl. 2000 and Supp. 2009). *Page 1